1

2

3

4

5

6                         UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8  JOSEPH WILSON,

9                          Plaintiff,          Case No. C10-1412-BAT

10         v.                                  **ORDER GRANTING
                                               DEFENDANTS' MOTIONS FOR
11  CITY OF SEATTLE, et al.,                   SUMMARY JUDGMENT**

12                         Defendants.

13         In this consolidated[1] § 1983 action, plaintiff alleges that on July 6, 2009, and November

14  9, 2009, defendants violated his constitutional rights and committed state torts against him.

15  Defendants move for summary judgment.  Dkts. 51, 52.  In response, plaintiff dismissed the

16  following claims: negligent infliction of emotional distress; unlawful search and seizure and

17  excessive use of force under the Washington State Constitution; Fifth Amendment and Equal

18  Protection violations;  discrimination; § 1981 violations; and defamation.  Dkt. 59.

19         Plaintiff, however, contends there are genuine issues of material fact that preclude

20  summary judgment as to the remaining state claims—false arrest, false imprisonment, assault

21  and battery, and intentional infliction of emotional distress—and the following federal claims—

22  unlawful arrest and use of excessive force in violation of the Fourth and Fourteenth

23

---

[1] *See* Dkt. 19, Order Consolidating Case with *Wilson v. Girtch, et al.*, Cause No: C11-493-BAT.

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 1

1   Amendments.  *Id.*  As discussed below, the Court finds  there are no disputed issues of material

2   fact and that as a matter of law, defendants are entitled to summary judgment.  The Court

3   therefore grants defendants' motions for summary judgment (Dkts. 51, 52) and **DISMISSES** the

4   case with prejudice.

5                                    **DISCUSSION**

6   **A.      Background**

7             This matter involves two consolidated actions.  The first was initiated on August 17,

8   2010, when plaintiff filed a complaint in King County Superior Court alleging that on July 6,

9   2009, and November 9, 2009, individual Seattle police officers violated his constitutional rights

10  and committed state torts against him.  The matter was removed to this Court on August 31,

11  2010, and assigned case number C10-1412-BAT.  Although the complaint contains references to

12  individual Seattle police officers as defendants, no Seattle police officer was named as a party or

13  defendant, and no officer was served summons before or after removal.[2]  The only defendants

14  the complaint named as a party, and who were served summons are the City of Seattle and

15  Seattle Police Department.  Accordingly, the only defendants before the Court, under this

16  complaint, are the City of Seattle and Seattle Police Department.  This is because a federal court

17  is without personal jurisdiction over a defendant unless the defendant has been served in

18  accordance with Fed. R. Civ. P. 4.  *See S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).

19  Thus the cause of action in the removed complaint is limited to whether the City of Seattle and

20  Seattle Police Department are "vicariously" liable for the actions of its police Officers, or under

21  the doctrine of respondeat superior for failing to properly train and supervise its employees.

22            While the removed complaint filed under case number C10-1412-BAT was pending,

23  ─────────────────────
    [2] The federal removal statute provides if service has not been completed before removal, it may
    be completed under the federal rules.  28 U.S.C. § 1448.

    ORDER GRANTING DEFENDANTS' MOTIONS FOR
    SUMMARY JUDGMENT - 2

plaintiff filed another complaint, C11-493-BAT, in this Court on March 21, 2011.  The 2011

complaint named Seattle Police Officer John Girtch and the City of Seattle as defendants and

alleged on July 6, 2009, and November 9, 2009, Officer Girtch violated plaintiff's constitutional

rights and committed state torts against him.  The complaint also alleged the City of Seattle was

liable for Officer Girtch's conduct under the theory of respondeat superior, and for failing to

train, supervise and properly discipline its police Officers.  On April 20, 2011, the Court granted

the parties' stipulation and request that C 11-493-BAT be consolidated with C 10-1412-BAT.

On December 14, 2012, defendant City of Seattle and defendant John Girtch filed

separate motions for summary judgment.  Plaintiff filed a single response and both defendants

filed separate replies.  The Court has reviewed the parties' pleadings and has determined the

matter may be resolved without oral argument.

**B.    Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to

the non-moving party, there is no genuine issue of material fact which would preclude judgment

as a matter of law.  Fed. R. Civ. P. 56(a).  Factual disputes whose resolution would not affect the

outcome of the suit are irrelevant to the consideration of a motion for summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once the moving party has satisfied

its burden, it is entitled to summary judgment if the non-moving party fails to present "specific

facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986).  The non-moving party may not "rely merely on allegations or denials in its own

pleading."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87

(1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's

position is not sufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.

1   1995).  In other words, "summary judgment should be granted where the non-moving party fails

2   to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor."  *Id.*

3   at 1220.

4       As to the issue of qualified immunity, a Court is "required to view the facts and draw

5   reasonable inferences 'in the light most favorable to the party opposing the [summary judgment]

6   motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "However, when the facts, as alleged by

7   the non-moving party, are unsupported by the record such that no reasonable jury could believe

8   them, [the Court] need not rely on those facts for purposes of ruling on the summary judgment

9   motion."  *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (citing *Scott*, 550 U.S. at 380).

10  **C.   The November 6, 2009 incident**

11      ***1.   There are no genuine disputes of material fact***

12      Plaintiff claims that on November 6, 2009, Officer Girtch violated his constitutional

13  rights and committed state torts against him.  In his motion for summary judgment, Officer

14  Girtch presented evidence, including a police dash-cam video, that on November 6, 2009, he and

15  Officer John Lewis were patrolling the Queen Anne neighborhood of Seattle.  The officers saw a

16  car at 9th Avenue West and West Howe Street with three young men, none of whom would look

17  at their police patrol car as it drove pass.  Officer Girtch considered this behavior suspicious

18  because it was the middle of the day during school hours, and all three individuals acted

19  nervously.  Based on his experience, Officer Girtch knew the three young men were driving in a

20  part of town that was notorious for car thefts and that many car thefts were committed by males

21  between ages 15 to 25.  Officer Girtch ran the car's license plate through Seattle Police

22  Department's Records Management System (RMS), which identified the car in both a narcotics

23  and a theft incident, and also indicated the car was registered to an address in Ballard, another

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 4

1    Seattle neighborhood.  Office Girtch found this information significant because in his

2    experience, most burglars and car prowlers commit their crimes in an area of town outside of

3    where they live.

4            After running the car's license plate through the RMS, Officer Girtch circled the block

5    and followed the car to the 500 block of West Garfield Street.  As Officer Girtch pulled up

6    behind the car, the car pulled over to the curb.  Officer Girtch activated the patrol car's lights to

7    perform a *Terry* stop.  Plaintiff acknowledges he saw the police patrol car behind his car and that

8    he saw the officers get out of the patrol car while he was still in his car.  As Officer Girtch

9    approached plaintiff's car, the passenger door opened and plaintiff got out before Officer Girtch

10   or his partner said anything.  For safety reasons, Officer Girtch ordered plaintiff to put his hands

11   on the trunk of the car.  Plaintiff appeared somewhat hesitant, and Officer Girtch ordered

12   plaintiff twice more to place his hands on the hood.  As plaintiff began to place his hands on the

13   car, Officer Girtch asked plaintiff if he had anything sharp on him.  In response plaintiff

14   attempted to break away from Officer Girtch.  As plaintiff attempted to move away from Officer

15   Girtch, the officer grabbed plaintiff in the shoulder area and pulled him backwards to the ground.

16   Plaintiff immediately got up and attempted to get away from the officers again.  Plaintiff admits

17   he got back up after being taken to the ground, but claims he did so because the wet ground was

18   making his clothes wet.

19           Officer Girtch again grabbed plaintiff in the shoulder area, pulled him backwards to the

20   ground.  Officer Girtch ordered plaintiff to stay on the ground and with the assistance of Officer

21   Lewis, was able to handcuff plaintiff.  Officer Girtch again asked plaintiff if he had any weapons

22   on him and patted plaintiff down.  Plaintiff was arrested for obstructing.  At the time of arrest,

23   Officer Girtch did not recognize plaintiff was the same person arrested in the July 2009 incident.

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 5

1   It was only later that Officer Girtch realized plaintiff was the same person involved in the July

2   incident.

3          Plaintiff has not presented any facts that are contrary to defendants' version of the facts,

4   and has not specifically contested defendants' version of the facts.  Plaintiff has proffered the

5   opinion of D.P. Van Blaricom.  The opinion does not create a genuine issue for trial because Mr.

6   Blaricom was not present when plaintiff was arrested on November 6, 2009, and thus has no

7   personal knowledge regarding the facts of the incident.  He thus is not in a position to and has

8   not, in any event, presented any facts creating an issue for trial.  Rather Mr. Van Blaricom

9   opines, "plaintiff was detained and arrested without reasonable suspicion or probable cause" and

10  that "any force is excessive per se."  Dkt. 60, ex. F at 6.  These opinions do not create a genuine

11  issue of material fact because they are legal conclusions, and the Court is not bound by a

12  witness's opinions about the law.  *See, e.g., Aguilar v. Int'l Longshoremen's Union Local No. 10*,

13  966 F.2d 443, 447 (9th Cir. 1992) (striking expert testimony regarding legal issues of

14  reasonableness and foreseeability is entirely appropriate); *see also Becton Dickinson & Co. v.*

15  *C.R. Bard, Inc.*, 922 F.2d 792, 797 (Fed. Cir. 1990) (witness's legal opinion is "not fact

16  evidence," and thus is insufficient to create genuine issue of material fact).

17          **2.   *Claims arising from November 6, 2009 incident***

18          Plaintiff alleges Officer Girtch violated his rights by arresting "Plaintiff without probable

19  cause, in violation of § 1983," using "unreasonable and excessive force in violation of 42 U.S.C.

20  § 1983 and the Fourth Amendment," and committing the state torts of assault, battery, false

21  arrest, false imprisonment, and intentional infliction of emotional distress.  *See* complaint filed in

22  C11-493-BAT (Dkt. 1 at 6-8).  Plaintiff also alleges the City of Seattle is liable for its policy and

23  practice of failing to train, supervise and discipline police Officers.  *Id*. at 8.

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 6

1        **a.  Fourth Amendment unlawful arrest claim**

2        The facts of this case show Officer Girtch had reasonable suspicion to stop plaintiff and

3   probable cause to arrest him.  Accordingly, Officer Girtch did not unlawfully stop, detain or

4   arrest plaintiff in violation of the Fourth Amendment.  The Fourth Amendment applies to all

5   seizures, "including seizures that involve only a brief detention short of traditional arrest."

6   *United States v. Enslin*, 327 F.3d 788, 795 (9th Cir. 2003) (quoting *United States v. Brignoni–*

7   *Ponce*, 422 U.S. 873, 878 (1975)).

8        A police officer may detain or seize an individual for brief investigatory purposes

9   provided the officer performing the stop has reasonable suspicion "that criminal activity may be

10  afoot."  *United States v. Orman*, 486 F.3d 1170, 1173 (9th Cir. 2007) (quoting *Terry v. Ohio*, 392

11  U.S. 1, 30 (1968).  To determine whether reasonable suspicion exists, a Court considers the

12  "totality of the circumstances surrounding the stop."[3]  Reasonable suspicion is formed by

13  "specific articulable facts which, together with objective and reasonable inferences, form the

14  basis for suspecting that the particular person detained is engaged in criminal activity."[4]  An

15  officer's inferences must "be grounded in objective facts and be capable of rational

16  explanation."[5]  Officers may "draw on their own experience and specialized training to make

17  inferences from and deductions about the cumulative information available to them that might

18  well elude an untrained person."[6]

19       Here, Officer Girtch saw three young men acting nervously in an area that was notorious

20  for car prowls and thefts.  The three young men were seen during school hours, but obviously

---

21  [3] *United States v. Burkett,* 612 F.3d 1103, 1107 (9th Cir. 2010) (citing *United States v. Hall*, 974
    F.2d 1201, 1204 (9th Cir. 1992)).

22  [4] *United States v. Thompson*, 282 F.3d 673, 678 (9th Cir. 2002).

    [5] *United States v. Lopez–Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (internal quotation marks and

23  citations omitted).

    [6] *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 7

1  were not on school grounds.  The men were in a car associated with a narcotics and a theft

2  incident and registered to an individual with a residence in another part of town.  Based on these

3  specific, articulable facts, and the officer's experience with burglars and car thieves, Officer

4  Girtch had a reasonable basis to suspect "criminal activity may be afoot" and that the three men

5  were engaged in criminal activity.  Officer's Girtch's decision to perform an investigatory or

6  *Terry* stop thus did not violate plaintiff's Fourth Amendment rights.[7]

7          The facts also show plaintiff's arrest did not violate the Fourth Amendment.  "A claim for

8  unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the

9  arrest was without probable cause or other justification."  *Dubner v. City and County of San*

10  *Francisco*, 266 F.3d 959, 964–65 (9th Cir. 2001) (citation omitted).  "Probable cause exists when

11  the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably

12  prudent person to believe that a crime has been committed."  *Lassiter v. City of Bremerton*, 556

13  F.3d 1049, 1053 (9th Cir. 2009).  "If an officer has probable cause to believe that an individual

14  has committed even a very minor criminal offense in his presence, he may, without violating the

15  Fourth Amendment, arrest the offender."  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354

16  (2001).

17          Here, the facts establish Officer Girtch had probable cause to arrest plaintiff for

18  obstruction.  Under Washington State law, "a person is guilty of obstructing a law enforcement

19  [7] Plaintiff has not alleged Officer Girtch's pat-down for weapons violated his rights or that the
20  pat-down caused any harm.  The facts, in any event, show Officer Girtch repeatedly ordered
    plaintiff to put his hands on the hood.  After placing his hands on the hood, plaintiff tried to
21  break away from the officer.  Plaintiff's resistance to the officer's orders and attempt to break
    away are specific facts justifying Officer Girtch's later pat down for weapons.  *See Burkett,* 612
22  F.3d at 1107 (refusal to comply with an officer's orders supports officer's belief suspect may be
    armed).

23

1   officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the

2   discharge of his or her official powers or duties."  RCW 9A.76.020.  Under the Seattle Municipal

3   Code, a person is guilty of obstructing a public officer if, among other things, he or she

4   intentionally and physically interferes with a public officer, hinders or delays an officer by

5   disobeying an order to stop, or refuses to cease an activity or behavior that creates a risk of injury

6   to any person when ordered to do so by an officer.  SMC 12A.16.010.  Both offenses are gross

7   misdemeanors punishable by up to 364 days of imprisonment.

8          The facts show plaintiff was repeatedly told to put his hands on the hood.  He eventually

9   placed his hands on the hood but only for a moment, and then broke away twice from Officer

10  Girtch before being subdued.  Once he was subdued, Officer Girtch remarked to plaintiff

11  "you've got to do what you're told."  Dkt. 52, Ex. O.  Plaintiff's acts are similar to acts found

12  under Washington law to constitute the crime of obstructing an officer.  *See e.g., State v.*

13  *Hudson*, 56 Wash. App. 490, 497–98 (1990) (suspect's flight from police hindered or delayed

14  investigation and arrest, thus supporting a conviction for obstruction); *State v. Little*, 116 Wash.

15  2d 488, 497 (1991) (suspect's refusal to stop when requested by the officers hindered, delayed or

16  obstructed the Officers in the discharge of their official duties); *State v. Contreras*, 92 Wash.

17  App. 307, 315-17 (1998) (arrest for obstructing was lawful where defendant disobeyed order to

18  keep hands up and exit vehicle and gave false name).

19         Accordingly, defendants are entitled to summary judgment as to plaintiff's Fourth

20  Amendment claims.

21         **b.  State claims of false arrest, false imprisonment**

22         Under Washington law, false arrest or false imprisonment is the unlawful violation of a

23  person's right of liberty or the restraint of that person without legal authority.  *Bender v. City of*

1   *Seattle*, 99 Wash. 2d 582, 590–91 (1983).  Probable cause is a complete defense to an action for

2   false arrest and false imprisonment.  *Hanson v. City of Snohomish*, 121 Wash. 2d 552, 563

3   (1993).  Because Officer Girtch had probable cause to arrest plaintiff for obstructing a public

4   officer, plaintiff's state law claims for false arrest and false imprisonment must be dismissed.

5            **c.   Federal claims of excessive force**

6            Police officers may only use "objectively reasonable" force under the circumstances,

7   which is determined by balancing "the nature and quality of the intrusion on the individual's

8   Fourth Amendment interests against the countervailing governmental interests at stake."

9   *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations and internal quotations marks omitted).

10  Governmental interests are examined in light of the "severity of the crime at issue, whether the

11  suspect poses an immediate threat to the safety of the officers or others, and whether he is

12  actively resisting arrest."  *Id*.  The Supreme Court's Fourth Amendment jurisprudence also

13  recognizes that the right to make an investigatory stop necessarily carries with it the right to use

14  some degree of physical coercion, and that an officer may use reasonable force where a person

15  resists or attempts to flee.  *Id.*

16          Plaintiff's claim rests on the argument that because he did nothing wrong, was not a

17  threat to the officers, and "was not fleeing the scene," Officer Girtch's use of force was excessive

18  and violated the Fourth Amendment.  Dkt. 59 at 13.  He further contends because plaintiff was

19  detained and arrested without reasonable suspicion or probable cause, "any force is excessive per

20  se."  Dkt. 60, ex. F at 6.  The undisputed facts do not support these arguments.  The undisputed

21  facts show Officer Girtch had reasonable suspicion to perform a *Terry* stop.  Officer Girtch used

22  no force until plaintiff tried to break away from the officer.  In response to plaintiff's attempt to

23  break away, Officer Girtch pulled plaintiff to the ground by the shoulders.  Plaintiff immediately

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 10

1  got off the ground and again tried to break away from the officer.  In response to plaintiff's

2  second attempt to break away, the officer again pulled plaintiff to the ground.  In short, the

3  undisputed facts of the case show Officer Girtch's use of force was objectively reasonable.

4        Hence, contrary to plaintiff's arguments, Officer Girtch had legal cause to stop and detain

5  plaintiff, and used reasonable force only in response to plaintiff's attempts to break away from

6  the Officer.  Accordingly, defendants are entitled to summary judgment as to plaintiff's Fourth

7  Amendment excessive force claim.

8              **d.  State law claims of assault and battery**

9        An assault is "an attempt, with unlawful force, to inflict bodily injuries upon another,

10  accompanied with the apparent present ability to give effect to the attempt if not prevented."

11  *Brower v. Ackerley*, 88 Wash. App. 87, 92 (1991).  A person is liable for assault if "(a) he acts

12  intending to cause a harmful or offensive contact with the person of the other or a third person,

13  or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent

14  apprehension."  *Id.* at 93 (citing Restatement (Second) Torts § 21).  A battery is the intentional

15  infliction of harmful bodily contact with plaintiff.  *Morinaga v. Vue*, 85 Wash. App. 822, 834,

16  (1997).

17        Plaintiff's state law claims of assault and battery are foreclosed by the Court's finding

18  that Officer Girtch lawfully detained and arrested plaintiff and did not use excessive force.

19  "Generally, a police officer making an arrest is justified in using sufficient force to subdue a

20  prisoner, however he becomes a tortfeasor and is liable as such *for assault and battery* if

21  unnecessary violence or excessive force is used in accomplishing the arrest."  *Boyles v. City of*

22  *Kennewick*, 62 Wash. App. 174, 176 (1991) (emphasis in original).  Here, the Court has already

23  found Officer Girtch lawfully stopped, detained and arrested plaintiff, and did not use excessive

1    force.  Given the circumstances in which the officer found himself, he was privileged to use

2    reasonable force to ensure his own safety.  Under Washington law, Officer Girtch's physical

3    contact was therefore lawful and he is entitled to state law qualified immunity as to state law

4    assault and battery claims.  *McKinney v. City of Tukwila*, 103 Wash. App. 391, 408–09 (2000).

5    Defendants are therefore entitled to summary judgment as to this claim.

6              **e.   State law claims of intentional infliction of emotional distress**

7              The elements of intentional infliction of emotional distress, also called outrage, "are (1)

8    extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and

9    (3) actual result to the plaintiff of severe emotional distress."  *Rice v. Janovich*, 109 Wash. 2d 48,

10   61 (1987).  "Liability exists 'only where the conduct has been so outrageous in character, and so

11   extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

12   atrocious, and utterly intolerable in a civilized community.'"  *Grimsby v. Samson*, 85 Wash. 2d

13   52, 59 (1975) (quoting Restatement (Second) of Torts § 46 cmt. d, at 73 (1965)).  "The law

14   intervenes only where the distress inflicted is so severe that no reasonable person could be

15   expected to endure it."  *Saldivar v. Momah*, 145 Wash. App. 365, 390 (2008).  Hence, the tort

16    "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

17   trivialities.'"  *Grimsby*, 85 Wash. 2d at 59 (quoting Restatement (Second)of Torts § 46 cont.d).

18   Here, the Court has found Officer Girtch lawfully detained and arrested plaintiff.  Officer Girtch

19   used force that was not excessive and only in response to plaintiff's attempt to break away from

20   the officer.  Under the circumstances of the case, there is no evidence upon which a reasonable

21   fact finder could find Officer Girtch's conduct was outrageous or beyond all possible bounds of

22   decency.  Defendants are therefore entitled to summary judgment as to this claim.

23

### 2.  Conclusion as to claims arising from the November 6, 2009 incident

There are no genuine disputes as to any material fact regarding the November 6, 2009 incident.  The Court finds the facts show Officer Girtch lawfully stopped, detained and arrested plaintiff.  The officer's use of force was not excessive, and applied only in response to plaintiff's two attempts to break away from the officer.  Plaintiff's subjective beliefs that he did nothing wrong and did not try to flee are unsupported and contradicted by the objective evidence proffered by defendants.  Plaintiff's proffer of Mr. Van Blaricom's opinions as to whether lawful cause existed for the stop and arrest are legal opinions, not factual assertions that create a genuine dispute as to any material fact.  Because the Court finds Officer Girtch did not violate plaintiff's federal or state rights, the claim that the City of Seattle, or Seattle Police Department are "vicariously" liable for the actions of its police officers, or liable under the doctrine of respondeat superior for failing to properly train and supervise its employees, fails and must also be dismissed.  Accordingly, the Court grants defendants' motion for summary judgment as to the November 9, 2009 incident, and dismisses all defendants and claims related to this incident.

**D.  The July 21, 2009 incident**

### 1.  There are no genuine disputes of material fact

On July 21, 2009, Seattle Police Officer Daniel Amador stopped plaintiff after he saw plaintiff jaywalk and after watching plaintiff walking down the middle of a street in the Queen Anne neighborhood of Seattle.  Plaintiff admits he was walking in the middle of the roadway; however, at the time of the stop he denied jaywalking.  There is no dispute Officer Amador told plaintiff he stopped him for a pedestrian violation and that he was also concerned for plaintiff's safety.

After following plaintiff, who was walking down the middle of West Smith Street,

1   Officer Amador parked his police car and went up to plaintiff who was still in the middle of the

2   roadway.  Over the next eight minutes, plaintiff was uncooperative and verbally argumentative

3   with Officer Amador, refusing to provide identification, and refusing to comply with the

4   officer's orders.  During that entire time, Officer Amador unsuccessfully tried to get plaintiff off

5   the street by verbal requests and by grabbing plaintiff's arm from time to time; at no time did

6   Officer Amador use additional force such as hitting, choking, or knocking plaintiff down.

7       Officer Amador's police car dash cam shows the following events.  After getting out of

8   his police car, Officer Amador asked plaintiff "what [he] was about, whether he was mental or

9   high or just walking around on the street."  Dkt. 53, ex. D (dash-cam video).  Officer Amador

10  said "this is the third time I saw you . . . I just told you, you walking around on the street."  *Id.*

11  Officer Amador ask plaintiff for identification.  Plaintiff refused and said he did not do anything

12  wrong; Officer Amador responded and said yes you did "you jaywalked . . . on McGraw Street."

13  *Id.*  Plaintiff immediately denied jaywalking and began arguing with Officer Amador.  Officer

14  Amador responded, "I have a camera on the car, there's no need to argue.  Officer Amador then

15  asked plaintiff to "come over to car" but plaintiff refused saying "I'm not coming over there."

16  As Officer Amador attempted to grab plaintiff's arm to take him to the police car, plaintiff said

17  "don't touch me," and pulled away.  Officer Amador asked plaintiff, "are you going to fight

18  me?" and plaintiff responded "you don't want to do this."  *Id.*  Officer Amador told plaintiff he

19  was being "legally detained" to which plaintiff responded "no I'm not."  *Id.*

20      After several minutes of unsuccessfully trying to gain plaintiff's cooperation, Officer

21  Amador called for backup.  While Officer Amador was in the street with plaintiff,  a citizen

22  called 911 stating "there's an officer by himself in a struggle with a gentleman."  Dkt. 53, ex. F.

23  Officer Amador did not know about the 911 call, or that because the caller reported a struggle,

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 14

his call was upgraded to a "help the Officer" call.  A "help the Officer" call is the highest level of

emergency assistance for an officer and used where an officer is in danger of serious physical

injury or is in a dire situation.

Three police cars responded to the call.  The first to respond was Officer Patricia

Manning.  As she got out of her car, she could see Officer Amador holding plaintiff's left arm.

Officer Manning went up to plaintiff with her hands extended yelling "don't you hit me," and

grabbed plaintiff about the shoulders.  Plaintiff began flailing and jerking his body in an attempt

to break away.  Plaintiff admits he tried to "move out of the way" and "get away" as Officer

Manning tried to grab onto him. Dkt. 53, ex. E.  As Officers Amador and Manning were

struggling with plaintiff, Officer Girtch arrived, and struck plaintiff four[8] times in the mid-

section before the three officers were able to pull plaintiff to the ground.  In his response,

plaintiff argues Officers Amador and Manning "held Joseph Wilson's arms behind him" as

Officer Girtch began punching him. Dkt. 59 at 3.  Officer Amador's dash-cam shows otherwise.

It shows Officers Amador and Manning struggling to hold onto plaintiff's arms and

unsuccessfully trying to pin his arms behind him.  It shows that before Officer Girtch hit plaintiff

in the mid-section, plaintiff broke Officer Mann's hold on his right arm.  A fourth officer,

Officer Cross, assisted in handcuffing plaintiff after plaintiff was on the ground, and taking him

to a patrol vehicle.

Officer Girtch was trained to strike a struggling suspect's midsection so that the suspect

will bend over and more easily be taken to the ground.  Officer Amador's dash-cam shows the

three officers were unsuccessful in taking plaintiff down to the ground until Officer Girtch struck

the fourth blow.  After the fourth blow, Officer Girtch stopped hitting plaintiff.  The dash-cam

---

[8] In his deposition, plaintiff testified he was punched three times. Dkt. 53, ex. E.  The dash-cam
video indicates Officer Girtch punched plaintiff four times in the mid-section.

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 15

1    also shows after plaintiff was taken to the ground, he continued to struggle, that it took four

2    officers to hand-cuff plaintiff, and that the officers repeatedly told plaintiff to get on his stomach,

3    and to stop resisting.  Plaintiff continued to be uncooperative after he was handcuffed and

4    escorted to a patrol car by refusing to spread his feet as the police frisked him.  Plaintiff was

5    arrested for pedestrian interference, obstruction, and resisting arrest.

6         Contrary to plaintiff's claim that Officer Girtch struck him and "kneed" him in the face

7    fracturing his nose, Officer Amador's dash-cam establishes Officer Girtch only hit plaintiff in the

8    midsection, and that no officer hit plaintiff in the head or face.  The dash-cam also shows Officer

9    Girtch did not "knee" plaintiff, i.e., smash his knee into plaintiff's face.  Following his arrest,

10   plaintiff was examined at Swedish Hospital in Ballard where the medical staff found plaintiff

11   "did not have any fractures did not appear to have serious injuries but probably has a mild

12   concussion."  Dkt. 53, ex. L.  A computer tomography (CT) scan was taken of plaintiff's head

13   and no fractures were identified identified.  *Id.*  On August 14, 2009, just a few weeks after

14   plaintiff's arrest, he was assaulted and struck in the head with a skateboard, was examined and

15   diagnosed with a nasal fracture, facial laceration, facial contusion and concussion.  *Id.*, ex. M.

16        Plaintiff proffered D.P. Van Blaricom's opinions that the officers used excessive force on

17   July 21, 2009.  Mr. Van Blaricom was not present at the incident.  He has provided legal

18   opinions, not factual assertions that create a genuine dispute as to any material fact.

19        ***2.   Claims arising from July 6, 2009 incident***

20        The defendants before the Court as to the July 6, 2009 incident are Officer Girtch and the

21   City of Seattle and Seattle Police Department.  In specific, plaintiff alleges Officer Girtch

22   violated his rights by arresting "Plaintiff without probable cause, in violation of § 1983," using

23   "unreasonable and excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment,"

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 16

1   and committing the state torts of assault, battery, false arrest, false imprisonment, and intentional

2   infliction of emotional distress.  *See* complaint filed in C11-493-BAT (Dkt. 1 at 6-8).

3          In the removed complaint, plaintiff neither named as defendant any other police officer,

4   nor served summons on any other police officer.  The only defendants named and served in the

5   removed complaint are the City Seattle and Seattle Police Department.  The Court has no

6   jurisdiction over Officers Amador and Manning and no authority to determine whether they are

7   liable in their personal or in their official capacities.  However, the Court may consider their

8   actions to the extent they relate to the causes of action before the Court:  whether the City of

9   Seattle and Seattle Police Department are "vicariously" liable for the actions of its police officers

10  on July 6, 2009, liable under the doctrine of respondeat superior, and liable for failing to properly

11  train and supervise its employees.

12          **a.  Fourth Amendment unlawful detention, arrest, and search claim**

13          The facts of this case show plaintiff's detention, arrest and search were lawful.  Officer

14  Amador saw plaintiff jaywalk at McGraw Street, and followed plaintiff as he walked down the

15  middle of a city street.  Plaintiff disputes he jaywalked.  Even accepting this, Officer Amador's

16  in-dash camera makes it plain-as-day the officer lawfully stopped plaintiff for the city violation

17  of walking in the middle of a city street instead of walking on the sidewalk.  *See* SMC 11.40.220.

18  Plaintiff's argument[9] Officer Amador lacked legal cause to stop plaintiff because the officer

19  expressed concerns about plaintiff's mental health is frivolous; the officer's concerns do not

20  obviate the plain fact plaintiff committed a city violation right in front of the officer.

21          Officer Amador also lawfully detained plaintiff.  Officer Amador told plaintiff that he

22  had committed a pedestrian violation and all he had to do was identify himself.  Dkt. 53, ex. D.

23

[9] Dkt. 59 at 6.

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 17

1   Plaintiff refused to identify himself, refused to follow any of the officer's orders, resisted the

2   officer's efforts to get him off the street, and instead argued with the officer for eight minutes

3   before the other officers arrived.  Throughout this eight minute period, plaintiff remained in the

4   street.  Contrary to plaintiff's claim he did not impede traffic and that he moved out of the street

5   to let cars by, the in-dash video shows a car had to stop and wait until Officer Amador pulled

6   plaintiff to one side of the street.  *Id.*

7          Officers Amador, Manning, and Girtch had probable cause to arrest plaintiff.  Plaintiff

8   was physically and verbally uncooperative and resistive every step of the way.  Officer Amador

9   thus had probable cause to arrest plaintiff for obstruction.  *See* RCW 9A.76.020, and SMC

10  12A.16.010.  Additionally, the officers had probable cause to arrest plaintiff for resisting arrest,

11  i.e., the misdemeanor offense of intentionally preventing or attempting to prevent a peace officer

12  from lawfully performing an arrest.  RCW 9A.76.040.  When Officer Manning arrived, she saw

13  Officer Amador struggling with plaintiff in the street.  As she approached, plaintiff, Officer

14  Manning yelled "don't you hit me."  Rather than complying with the officers, plaintiff began

15  jerking and flailing in an attempt to break free of them.  These facts show defendants had

16  probable cause to arrest plaintiff for resisting arrest.  Because the plaintiff's arrest was lawful,

17  plaintiff's claim of unlawful search fails.

18         In short, based on the facts of this case, the Court concludes defendants are entitled to

19  summary judgment as to plaintiff's Fourth Amendment claims.

20              **b.  State claims of false arrest, false imprisonment**

21         As discussed earlier, probable cause is a complete defense to an action for false arrest and

22  false imprisonment.  *Hanson*, 121 Wash. 2d at 563.  Because the officers had probable cause to

23  arrest plaintiff for obstructing a public officer and resisting arrest, plaintiff's state law claims for

1   false arrest and false imprisonment must be dismissed.

2              **c.   Federal claims of excessive force**

3         Plaintiff's federal excessive force claim is based on the acts of Officers Amador,

4   Manning, and Girtch.  There is nothing showing Officer Amador used excessive force.  The facts

5   show that for eight minutes, he attempted to get plaintiff out of the roadway and attempted to get

6   plaintiff to identify himself.  Plaintiff resisted both verbally and physically.  Officer Amador did

7   not strike, knock-down or choke plaintiff.  At most, he grabbed plaintiff by the arm.  When the

8   other officers arrived, Officer Amador struggled with plaintiff but struck no blows.

9         The facts also show Officer Manning did not use excessive force.  She went up to

10   plaintiff yelling "don't you hit me," and then unsuccessfully tried to restrain plaintiff by grabbing

11   at his shoulders.  Unable to restrain plaintiff, she hit him in the mid-section.  Her blows were

12   ineffectual as plaintiff continued to struggle and was able to break free from her.  Plaintiff argues

13   "Officer Manning held Mr. Wilson's arms while he was being punched, pushed him to the

14   ground." Dkt. 59 at 3.  Officer Amador's dash-cam shows otherwise.  It shows plaintiff broke

15   Officer Manning's grip on his right arm before Officer Girtch struck plaintiff, and that plaintiff

16   went to the ground because Officer Girtch hit him in the mid-section.  Given the fact plaintiff

17   was actively resisting arrest—in fact fighting with the officers—Officer Manning used

18   reasonable force.  *See, e.g., United States v. Willfong*, 274 F.3d 1297, 1301 (9th Cir. 2001) ("[A]

19   person does not have the right to resist arrest even if the charges are false or the arrest

20   unlawful.").

21         Although he has never been named as a defendant, plaintiff also argues in his response

22   brief that Officer Cross "held Mr. Wilson's arms while he was being punched, push him to the

23   ground, holding him to the ground." Dkt. 59 at 3.  This argument is frivolous.  Officer Amador's

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 19

1   dash-cam shows Officer Cross did not hold plaintiff's arms, hit him, or help take plaintiff down

2   to the ground.  In his deposition, Officer Cross stated after plaintiff was hand-cuffed, he walked

3   plaintiff to the patrol car.  At the patrol car plaintiff continued to resist by refusing to spread his

4   legs when ordered to do so.  To gain compliance, Officer Cross states he raised plaintiff's cuffed

5   arms "up behind his back."  Dkt. 52, ex. G.  Plaintiff has not argued this constituted excessive

6   force, or that this caused any injury.  In any event, the Court finds given the circumstances

7   Officer Cross faced, the officer did not use excessive force in raising plaintiff's arms.

8        Unlike the other officers, Officer Girtch hit plaintiff four times.  Whether Officer Girtch

9   used reasonable force requires assessing the force used and the governmental interests at stake:

10  "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the

11  safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to

12  evade arrest by flight."  *Graham*, 490 U.S. at 396.

13       Based on the undisputed facts, Officer Girtch's use of force was reasonable.  Officer

14  Amador attempted to gain plaintiff's cooperation over an eight minute period.  During that time

15  period he used virtually no force and was unsuccessful in gaining any cooperation.  When

16  Officer Manning arrived, Officer Amador was still struggling with plaintiff in the street and

17  holding on to his arm.  When Officer Manning tried to grab on to plaintiff he resisted, struggled

18  and began to flail away.  By his own admission, he was trying to get away.  When Officer Girtch

19  arrived, he could see that officers Manning and Amador were unsuccessfully struggling to

20  restrain plaintiff.  He rushed up and hit plaintiff in the mid-section for the purpose of causing

21  plaintiff to bend over and go to the ground.  His first three blows were unsuccessful in achieving

22  this and plaintiff continued to struggle; it was not until the fourth blow that plaintiff began to fall

23  towards the ground.  Officer Girtch did not hit plaintiff after the fourth blow, and contrary to

1    plaintiff's argument, did not "knee" him in the face as he fell.

2    It is never a pretty sight to see an officer hit a person but that is not the test the Court may

3    apply in determining whether the officer's blow was reasonable or excessive.  There are no per

4    se rules in the Fourth Amendment excessive force context.  *Mattos v. Agarano*, 661 F.3d 433,

5    441 (9th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)).  Hence, the fact an officer

6    strikes a person while he or she is arresting an individual does not mean the officer has used

7    excessive force.

8    Here, plaintiff was essentially fighting with two officers when Officer Girtch arrived.

9    Officers Amador and Manning were unsuccessfully trying to control plaintiff by grappling with

10   him.  Officer Girtch hit plaintiff in the mid-section only to get him to the ground.  He used no

11   weapons and he stopped hitting plaintiff once plaintiff began going down.  There is no genuine

12   dispute of material fact that plaintiff was struggling with and actively resisting arrest and that

13   Officer Girtch hit plaintiff in the mid-section for the sole purpose of getting plaintiff to the

14   ground.  There is also no genuine dispute of fact that as soon as plaintiff went down, Officer

15   Girtch stopped hitting him.  Under these circumstances, the four blows Officer Girtch

16   administered to plaintiff's mid-section was a reasonable use of force.  Accordingly, defendants

17   are entitled to summary judgment as to plaintiff's Fourth Amendment excessive force claim.

18                    **d.  State law claims of assault and battery**

19   As discussed above, plaintiff's state law claims of assault and battery are foreclosed by

20   the Court's finding that defendants lawfully detained and arrested plaintiff and did not use

21   excessive force.  Additionally as noted above, given the circumstances of the July 2009 incident,

22   the officers were privileged to use reasonable force to ensure their own safety.  Under

23   Washington law, the officers' physical contact was therefore lawful and they are entitled to state

ORDER GRANTING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 21

1    law qualified immunity as to state law assault and battery claims.  *McKinney*, 103 Wash. App. at

2    408–09.  Defendants are therefore entitled to summary judgment as to this claim.

3                    **e.   State law claims of intentional infliction of emotional distress**

4            As discussed above, the officers lawfully detained and arrested plaintiff.  They used force

5    that was not excessive and only in response to plaintiff's resistance to arrest and attempt to break

6    away from the officers.  Under the circumstances of the case, there is no evidence upon which a

7    reasonable fact finder could find the officers' conduct was outrageous or beyond all possible

8    bounds of decency.  Defendants are therefore entitled to summary judgment as to this claim.

9            ***3.   Conclusion as to claims arising from the July 21, 2009 incident***

10           There are no genuine disputes as to any material fact regarding the July 21, 2009

11   incident.  The Court finds the facts show plaintiff was lawfully stopped, detained and arrested,

12   and that the officers used reasonable force under the circumstances of this case.  Plaintiff's

13   proffer of Mr. Van Blaricom's opinions as to whether the force used was excessive are legal

14   opinions, not factual assertions that create a genuine dispute as to any material fact.  Because the

15   Court finds the officers did not violate plaintiff's federal or state rights, the claim that the City of

16   Seattle, or Seattle Police Department are "vicariously" liable for the actions of its police officers,

17   or liable under the doctrine of respondeat superior for failing to properly train and supervise its

18   employees, fails and must also be dismissed.  Accordingly, the Court grants defendants' motion

19   for summary judgment as to the July 21, 2009 incident, and dismisses all defendants and claims

20   related to this incident.

21                                              **CONCLUSION**

22           The Court has considered the parties pleadings and the record in the case and **ORDERS**:

23           (1)    Defendants' motions for summary judgment (Dkt. 51, 52) are **GRANTED**;

1   (2)  The case is **DISMISSED** with prejudice as to all defendants;

2   (3)  The Clerk shall provide a copy of this Order to all counsel of record.

3 DATED this 28th day of January, 2013.

4

5                       _____

                       BRIAN A. TSUCHIDA

6                       United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23